**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
**LURINE GLOVER,**                                    :
                                                      :
                        **Plaintiff,**                :          **REPORT AND**
                                                      :          <u>**RECOMMENDATION**</u>
        **-against-**                                 :
                                                      :          **06 Civ. 4586 (SCR)(LMS)**
**MICHAEL J. ASTRUE,**[1]                             :
**Commissioner of Social Security,**                  :
                                                      :
                        **Defendant.**                :
-------------------------------------------------------------X

**TO:   THE HONORABLE STEPHEN C. ROBINSON, U.S.D.J.**

Lurine Glover brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking

judicial review of the final decision of the Commissioner of Social Security (the

"Commissioner"), which found that she was entitled to supplemental security income ("SSI")

under the Social Security Act (the "Act") since January 21, 2004, but not at any time before that

date.  The Commissioner moves to remand Plaintiff's case back to the Social Security

Administration for further proceedings under the fourth sentence of 42 U.S.C. § 405(g).

Currently pending before the Court are the Commissioner's motion for remand and Plaintiff's

motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure (Docket #'s 9, 12).  For the reasons that follow, I conclude, and respectfully

recommend that Your Honor should conclude, that the Commissioner's determination should be

reversed and remanded for further administrative proceedings pursuant to sentence four of 42

U.S.C. § 405(g).

-----

[1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007.  Therefore, in
accordance with Federal Rule of Civil Procedure 25(d), Michael J. Astrue is substituted as the
Defendant in this action for Jo Anne B. Barnhart.

I.     **BACKGROUND**

A.     **Procedural History**

On February 4, 2003, Plaintiff filed an application for SSI benefits, alleging that her disabilities began on October 2, 2002.  Administrative Record ("AR") 75-78, 83, 86-95. Plaintiff's application was given an earlier "protective filing date" of January 15, 2003.  Id. 83. The disabilities Plaintiff claimed included back problems, hyperthyroidism, heart problems, and muscle pains.  Id. 87.  Plaintiff's application for SSI benefits was denied on March 25, 2003.  Id. 51-55.  Thereafter, Plaintiff timely requested a hearing in front of an Administrative Law Judge ("ALJ") in an application dated May 5, 2003.  Id. 56.  Following the hearing, held on January 21, 2004, the ALJ issued a decision on February 27, 2004, concluding that Plaintiff had been disabled since January 21, 2004, and was eligible for SSI benefits as of that date.  Id. 12-22, 24-50.  Plaintiff filed a request for review of the ALJ's decision with the Appeals Council on April 26, 2004.  Id. 224-27.  On April 12, 2006, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  Id. 8-11.

On June 14, 2006, Plaintiff commenced the instant action in this Court (Docket # 2) alleging that the ALJ did not properly evaluate the evidence from Plaintiff's treating and non-treating sources and that the Commissioner's decision was not supported by substantial evidence. Thereafter, the Commissioner filed a motion for remand (Docket # 9) and a memorandum of law in support of that motion (Docket # 10) on the grounds that while there is substantial evidence to support the ALJ's decision granting SSI benefits, the case must be remanded because the ALJ failed to evaluate the medical evidence under the proper legal standard.  Mem. of Law in Supp. at 1.  Plaintiff filed a motion for judgment on the pleadings (Docket # 12) and a memorandum of

law in support of that motion (Docket # 13), demanding that the Commissioner pay SSI benefits to Plaintiff that accrued as of January 13, 2003,[2] rather than January 21, 2004.  Mem. of Law in Opp. at 1-2.  In the alternative, should the Court decide to remand the case, Plaintiff requests that the Court impose time limits on the remand proceedings.  Id.

    **B.**    <u>Medical Evidence</u>

        **1.**    <u>Evidence from Treating and Consultative Physicians</u>

On November 19, 2002, in connection with a previous application for disability, Plaintiff had a consultative examination with Dr. Ramon Moquete.  AR 103-05.  Dr. Moquete specialized in internal medicine.  Id.  Plaintiff complained of hypertension that began when she was 14 years old, as well as lower back pain.  Id. 103.  Plaintiff stated that her daily activities included watching television and performing household chores.  Id.  In Dr. Moquete's opinion, the physical examination did not produce any remarkable findings, and he noted that Plaintiff suffered no acute distress or discomfort during the exam.  Id. 104.  Dr. Moquete diagnosed Plaintiff with arthralgia of the lumbar spine with decreased range of motion and hypertension requiring better control of Plaintiff's current treatment.  Id. 104.  Dr. Moquete further found that Plaintiff was mildly impaired in her ability to lift and carry objects.  Id. 104.  He also noted that Plaintiff was able to sit, stand, walk, handle objects, hear, speak, travel, and follow directions. Id.  Dr. Moquete concluded that Plaintiff could perform sedentary activities and recommended that she follow up with her primary physician.  Id. 104-05.

The Office of Disability Determinations referred Plaintiff to Dr. Peter Graham for a

---

[2]Presumably this is a typographical error, and Plaintiff meant January 15, 2003, since that is the protective filing date of her application for SSI.

consultative examination on February 28, 2003.  Id. 117-20.  Dr. Graham noted that Plaintiff

complained of back pain that persisted over the previous five months which Plaintiff described as

"constant pain . . . usually occurring when she walk[ed]," a history of hypertension for 20 years, a

history of palpitations for 4 years, a history of hypothyroid disease[3] for 15 years, and a history of

joint pains for one year.  Id. 117-18.  Dr. Graham examined a MRI taken in October, 2002, and

noted that it showed spondylolisthesis as well as bulging discs in Plaintiff's spine.  Id. 117.  Dr.

Graham also noted that Plaintiff was currently on medication for her ailments, including Avalide

for her hypertension and Naprosyn for her joint pain.  Id. 117-18.  Dr. Graham noted that Plaintiff

walked normally, could dress and undress normally, and could get on and off the exam table

normally.  Id. 118.  He also noted a decrease in range of motion in Plaintiff's spine, as well as

tenderness on palpation of the lumbar spine.[4]  Id. 119.  In regards to Plaintiff's extremities, Dr.

Graham noted that she exhibited full range of motion in all her joints without pain or swelling.

Id.  However, Plaintiff was not able to perform a full squat due to knee pain.  Id.  Dr. Graham

diagnosed Plaintiff with back pain by history with mild functional deficit, poorly controlled

hypertension, palpitations by history, thyroid disorder by history (but no clinical evidence of

hypothyroidism), and joint pains by history with mild functional deficit in the knees.  Id. 120.

Dr. Graham found that Plaintiff was able to sit, stand, and walk.  Id.  She was limited in her

ability to perform lifting or heavy carrying due to her back pain.  Id.  Dr. Graham ability to

handle objects was normal; her hearing and speech were normal; and her ability to travel was

---

[3]Either Dr. Graham's report contains a typographical error, or Plaintiff incorrectly reported to him
her medical history, because she did not have a history of *hypo*thyroidism but rather, as shown in
her medical records, a history of *hyper*thyroidism.  See, e.g., AR 111, 140, 142, 164.

[4]Plaintiff's range of flexion and extension of the spine was 75 degrees.  AR 119.

normal.  Id.

On November 21, 2003, Dr. Imelda Cruz-Banting stated that she saw Plaintiff for physical therapy two to three times per week, beginning on November 10, 2003.  Id. 211, 217. Dr. Cruz-Banting was a specialist in physical medicine and rehabilitation.  Id. 218.  Dr. Cruz-Banting diagnosed Plaintiff with back pain, disc disease, and knee pain.  Id. 211.  She noted that all of these ailments lasted or could be expected to last more than one year.  Id.  Dr. Cruz-Banting stated that Plaintiff's symptoms included knee pain with swelling that was aggravated by walking and weight-bearing activities, including a diminished range of motion and weakness in her knees. Id.  She said that Plaintiff also had back pain characterized by a slow antalgic gait, diminished range of motion of the lumbosacral spine, and moderate spasm.  Id.

Dr. Cruz-Banting stated that treatment for Plaintiff included physical therapy and the medication Bextra, which would not cause Plaintiff any side effects.  Id. 212.  She stated that Plaintiff had to lie down for six hours intermittently during the day.  Id.  She also noted that for a total of four hours in an eight-hour work day, Plaintiff could sit continuously up to thirty minutes, stand continuously up to thirty minutes, and walk continuously up to thirty minutes.  Id. 213.  Dr. Cruz-Banting further noted that Plaintiff could frequently lift up to ten pounds and occasionally lift up to twenty pounds, but she could never lift anything above twenty pounds.  Id.[5]  She also opined that Plaintiff could continuously carry up to five pounds, frequently carry up to ten pounds, and occasionally carry up to twenty pounds, but she could never carry anything above

---

[5] Note that in the reports filed by Dr. Imelda Cruz-Banting, Dr. Ein Alshaeba Samer, and Dr. Paul Kleinman, the term "occasionally" means "1% to 33% of an 8-hour workday," the term "frequently" means "34% to 66% of an 8-hour workday," and the term "continuously" means "67% to 100% of an 8-hour workday."  Id. 203, 208, 213.

5

twenty pounds.  Id.  Plaintiff could occasionally bend, climb, and reach but could never squat.

Id.  Plaintiff could use both hands for simple grasping, fine manipulation, and the pushing and

pulling of arm controls.  Id. 214.  Plaintiff could not use her legs or feet for repetitive movements

due to her knee pain.  Id.  Dr. Cruz-Banting also stated that Plaintiff was totally restricted from

unprotected heights and being around moving machinery, moderately restricted from stress and

exposure to changes in temperature, and mildly restricted from driving a motor vehicle and

exposure to dust, fumes, and gases.  Id.  While Plaintiff was physically able to travel by bus, she

was not able to travel by subway.  Id. 215.  Dr. Cruz-Banting finally noted that it was difficult for

Plaintiff to go up and down steps and that she required a rail on both sides of her in order to

balance.  Id.  In a subsequent letter to the ALJ dated February 17, 2004, Dr. Cruz-Banting stated

that she continued to treat Plaintiff two to three times per week since November, 2003, and that

she continued to regard Plaintiff as "totally disabled" and "in need of further treatment."  Id. 217-

18.

On December 16, 2003, Dr. Ein Alshaeba Samer noted his opinions regarding Plaintiff.

Id. 206-10.  Dr. Samer was Plaintiff's primary care physician and stated that he saw Plaintiff

every two months.  Id. 206-10, 226.  Dr. Samer diagnosed Plaintiff with a thyroid disorder,

cervical dysplasia, and degenerative joint disorder.  Id. 206.  He also noted that the

aforementioned ailments lasted or could be expected to last more than one year.  Id.  He noted

that Plaintiff's symptoms included pain, fatigue, weakness, palpitations, tachycardia, and swelling

of the knee joints.  Id.

Dr. Samer stated that treatment for Plaintiff included the medications Avalide, Toprol

XL, and Methinazol, none of which would cause Plaintiff any side effects.  Id. 207.  He stated

that Plaintiff did not have to lie down during the day.  Id.  He also noted that in an eight-hour

work day, Plaintiff could sit continuously up to eight hours, stand continuously up to two hours,

and walk continuously up to one hour.  Id. 208.  He further noted that Plaintiff could frequently

lift up to five pounds and occasionally lift up to twenty pounds, but she could never lift anything

above twenty pounds.  Id.  He also opined that Plaintiff could occasionally carry up to ten

pounds, but she could never carry anything above ten pounds.  Id.  Plaintiff could occasionally

bend, climb, squat, and reach.  Id.  Plaintiff could use both hands for simple grasping, fine

manipulation, and the pushing and pulling of arm controls.  Id. 209.  Plaintiff could not use her

legs or feet for repetitive movements due to her arthritis.  Id.  Dr. Samer also stated that Plaintiff

was totally restricted from unprotected heights, being around moving machinery, exposure to

changes in temperature, driving a motor vehicle, and exposure to dust, fumes, and gases.  Id.  He

noted that Plaintiff was moderately restricted from stress.  Id.  Plaintiff was physically able to

travel by bus or subway on a daily basis.  Id. 210.  Finally, Dr. Samer noted that Plaintiff needed

to avoid activity requiring prolonged standing or walking due to bilateral knee joint disease.  Id.

209.

On January 15, 2004, Dr. Paul Kleinman reported that he had first seen Plaintiff on

October 30, 2003, and continued to see her every six weeks until her most recent visit on

December 4, 2003.  Id. 201.  Dr. Kleinman was an orthopedic surgeon.  Id. 226.  Dr. Kleinman

diagnosed Plaintiff with mild arthritis in both knees which lasted or could be expected to last

more than one year.  Id. 201.  He noted that Plaintiff's symptoms included pain in the knees.  Id.

Dr. Kleinman stated that treatment for Plaintiff included wearing knee sleeves and taking the

medication Celebrex, which would not cause Plaintiff any side effects.  Id. 202.  He stated that

7

Plaintiff did not have to lie down during the day.  Id.  He also noted that in an eight-hour work day, Plaintiff could sit continuously up to eight hours for a total of eight hours,[6] stand continuously up to thirty minutes for a total of one hour, and walk continuously up to thirty minutes for a total of one hour.  Id. 203.  He further noted that Plaintiff could occasionally lift or carry up to ten pounds, but she could never lift or carry anything above ten pounds.  Id.  Plaintiff could frequently reach and occasionally bend, but she could never climb or squat.  Id.  Plaintiff could use both hands for simple grasping, fine manipulation, and the pushing and pulling of arm controls.  Id. 204.  Plaintiff could not use her legs or feet for repetitive movements due to her knee pain.  Id.  Dr. Kleinman also stated that Plaintiff was totally restricted from unprotected heights, but is not restricted from being around moving machinery, exposure to changes in temperature, driving a motor vehicle, stress, or exposure to dust, fumes, and gases.  Id.  Plaintiff was physically unable to travel by bus or subway on a daily basis because she could only stand or walk for a total of thirty minutes.  Id. 205.

Dr. Kleinman submitted a letter to Plaintiff's attorney dated January 29, 2004.  Id. 221-22. This letter was in response to a request from Plaintiff's attorney for further information regarding a comment that the ALJ made during the hearing held on January 21, 2004.  Id.  The ALJ inquired as to whether a claimant with "minimal arthritis" indicated on an x-ray could have disabling symptoms.  Id. 40, 221.  Dr. Kleinman responded in his letter that "[f]requently we see patients with severe arthritis on x-ray who have fairly good function and minimal symptoms.  On the other hand we also frequently see patients with mild arthritis on x-ray who have significant

---

[6] While Dr. Kleinman does not specify that the number he wrote (the number "8") to indicate the amount of time Plaintiff could sit represented the time in hours, it can be assumed from the rest of his report that he intended to record his findings in hours.  See id. 203.

disability.  Unfortunately x-ray is not a particularly accurate way of assessing the degree of

arthritis."  Id. 221.  He further noted that to get an accurate assessment of Plaintiff's potentially

significant disability, one could perform an arthroscopy to examine Plaintiff's joint surface.  Id.

### 2.     Evidence from the State Agency Disability Analyst

On March 24, 2003, a State Agency disability analyst, S. Morey, completed a residual

functional capacity assessment of Plaintiff. Id. 125-30.  Having reviewed the record, Morey

found that Plaintiff could frequently lift and/or carry a maximum of ten pounds, while she could

only occasionally lift and/or carry a maximum of twenty pounds.[7]  Id. 126.  Morey noted that

Plaintiff could stand and/or walk with normal breaks for about six hours in a normal eight-hour

work day.  Id.  Morey further noted that Plaintiff could sit with normal breaks for about six hours

in a normal eight-hour workday.  Id.  Plaintiff's ability to push and/or pull, other than when lifting

and/or carrying, was unlimited.  Id.  Morey stated that Plaintiff could occasionally climb,

balance, stoop, kneel, crouch, and crawl.  Id. 127.  Morey finally noted that Plaintiff did not have

any manipulative, visual, communicative, or environmental limitations.  Id. 127-28.  Morey

concluded that Plaintiff retained the residual functional capacity for the full range of light work.

Id. 129.

### 3.     Evidence from Medical Care Received at St. Barnabas Hospital

Plaintiff received her medical care at St. Barnabas Hospital in the Bronx, New York, and

the record contains copies of her treatment records for the period from January 1, 2001, to

---

[7] In the explanation of Morey's assessment, the term "frequently" means "occurring one-third to
two-thirds of an 8-hour workday (cumulative, not continuous)" and the term "occasionally"
means "occurring from very little up to one-third of an 8-hour workday (cumulative, not
continuous)."  Id. 125.  The term "lift and carry" includes the action of upward pulling.  Id. 126.

November 11, 2003.  Id. 131-200.  In October, 2002, Plaintiff hurt her back while moving

furniture.  Id. 148.  An MRI of her lumbar spine, taken on October 28, 2002, indicated

spondylolisthesis and a disc bulge.  Id. 116.  In addition to being treated for a bulging disc in her

back and bilateral knee pain, Plaintiff also received treatment for hypertension, overactive

thyroid, and cervical dysplasia.  Id. 133-55.  In February, 2003, Plaintiff complained of back pain

and was ordered to be evaluated for her bulging disc.  Id. 141.  In May, 2003, she continued to

report back pain and also reported knee pain, for which she was ordered to receive x-rays to rule

out degenerative joint disease.  Id. 139.  In September, 2003, Plaintiff had swelling and

tenderness in her knees, right knee more than left knee.  Id. 137.  X-rays taken on September 5,

2003, showed minimal arthritis in both knees with mild marginal spurring.  Id. 161.  In October,

2003, Plaintiff had swelling and effusion in her right knee.  Id. 134.  On October 17, 2003, scans

of the hip and spine were performed to rule out osteoporosis and fracture, but the scan of the

lumbar spine indicated mild degenerative spur formation.  Id. 156-57.

### C.   Other Evidence

Plaintiff was born on July 10, 1949, and she was 54 years old at the time of the hearing.

Id. 27-28.  At the hearing, Plaintiff stated that she completed an eighth grade education.[8]  Id. 29.

Plaintiff testified that she was divorced with no children under the age of 18.  Id. 30.  She stated

that she was "not too good" at reading or writing.  Id. 29.  She stated that she was on the

medications Celebrex for her physical pain, methazolamide for her thyroid problem, and Toprol

for her blood pressure.  Id. 31.  Plaintiff testified that the only job she had for the past fifteen

---

[8]However, Plaintiff indicated in various parts of the Administrative Record that she had a ninth
grade education and an eleventh grade education.  Id. 93, 103.

years was as a home attendant, which lasted for two years.  Id. 32.  Her work as a home attendant included tasks such as cooking, cleaning, lifting patients, mopping, and grocery shopping.  Id. Plaintiff stated that she stopped working and applied for disability in 2002.  Id. 32, 75.  She testified that her disability included significant pain and weakness in her knees and back.  Id. 33. She stated that she could only stand comfortably for one hour, and therefore, she preferred to sit. Id.  However, she also stated that she had problems in her back and knee when she was sitting which caused her leg to go numb.  Id. 34.  Plaintiff opined that in an eight-hour workday, she felt that she could be on her feet for one to two hours and that she could sit for two to three hours.  Id. 33-34.  She testified that she could not lift or carry light objects for too long due to her back.  Id. 35.  She also stated that she had to lie down about three hours during the day to relieve her back and knee pain.  Id. 35-36.  She claimed that she used a cane for support and that she could only bend or stoop with support.  Id. 35, 38.  Plaintiff's x-rays showed minimal arthritis in her knees, and she testified that she has had to get fluid removed from her knees.  Id. 40-42.  To help alleviate some of her knee ailments, Plaintiff stated that she went to therapy two times per week. Id. 36-37.

Vocational expert, Raymond Cestar, also testified at the hearing.  Id. 44-46.  Cestar testified about three of Plaintiff's past jobs.  Plaintiff worked as a home attendant from May 19, 2001, to October 2, 2002.  Id. 45, 88.  He explained that Plaintiff's work as a home attendant was a marginally semi-skilled position that required a medium level of exertion and had an SVP[9] of 3.

_____

[9] "SVP" stands for "specific vocational preparation," which is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Dictionary of Occupational Titles, Appendix C.  An SVP of 3 means "[o]ver 1 month up to and including 3 months."  Id.

Id. 45.  Plaintiff was also a babysitter from 1993 to 1996; however, she did not get paid for this

job because she worked as a "volunteer."  Id. 45-46, 88.  As a babysitter, Plaintiff changed

diapers, cooked meals, and fed the child that she cared for.  Id. 88.  Cestar explained that

Plaintiff's work as a babysitter was a marginally semi-skilled position that required a medium

level of exertion and had an SVP of 3.  Id. 45.  Finally, Cestar also mentioned Plaintiff's work as

an office clerk at a courthouse from January, 1999, to November, 1999.  Id. 45, 88.  The office

clerk job was also a volunteer position.  Id. 46, 88.  Cestar testified that the office clerk position

was marginally semi-skilled, required a light level of exertion, and had an SVP of 3.  Id. 45.

Because the ALJ found that Plaintiff did not suffer from nonexertional impairments, he did not

ask any further questions of the vocational expert.  Id. 47.

## II.  <u>APPLICABLE LEGAL PRINCIPLES</u>

### A.  <u>Standard of Review</u>

The scope of review in an appeal from a social security disability determination involves

two levels of inquiry.  First, the court must review the Commissioner's decision to determine

whether the Commissioner applied the correct legal standard when determining that the plaintiff

was not disabled.  <u>Tejada v. Apfel</u>, 167 F.3d 770, 773 (2d Cir. 1999).  Failure to apply the correct

legal standard is grounds for reversal of the ruling.  <u>Townley v. Heckler</u>, 748 F.2d 109, 112 (2d

Cir. 1984).  Second, the court must decide whether the Commissioner's decision was supported

by substantial evidence.  <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 105-06 (2d Cir. 2003).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  Id. at 106 (internal quotation marks and citations omitted).

When determining whether substantial evidence supports the Commissioner's decision, it is

important that the court "carefully consider[] the whole record, examining evidence from both sides." Tejada, 167 F.3d at 774 (citing Quinones v. Chater, 117 F.3d 29, 33 (2d Cir. 1997)). "It is not the function of a reviewing court to decide de novo whether a claimant was disabled." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted). If the "decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its own] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). Moreover, the ALJ "has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

### B.  Determining Disability

In the context of SSI, the Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). In evaluating a disability claim, regulations issued pursuant to the Act set forth a five-step process that the Commissioner must follow. See 20 C.F.R. § 416.920(a)(4).

First, the Commissioner will consider whether the claimant is working in "substantial gainful activity." Id. at § 416.920(a)(4)(i),(b). If the claimant is engaged in "substantial gainful activity," then the Commissioner will find that the claimant is not disabled. Id. Second, the Commissioner considers the medical severity of the claimant's impairments. Id. at § 416.920(a)(4)(ii). The claimant's impairment will not be deemed severe "[i]f [he or she] do[es] not have any impairment or combination of impairments which significantly limits [his or her]

13

physical or mental ability to do basic work activities." Id. at § 416.920(c).  Third, if it is found

that the claimant's impairments are severe, the Commissioner will determine if the claimant has

an impairment that meets or equals one of the impairments presumed severe enough to render

one disabled, listed in Appendix 1 to Part 404, Subpart P of the Social Security Regulations.  See

id. at § 416.920(a)(4)(iii),(d).  If the claimant's impairments are not on the list, the Commissioner

considers all the relevant medical and other evidence and decides the claimant's residual

functional capacity.  See id. at § 416.920(e).  Then, the Commissioner proceeds to the fourth step

to determine whether the claimant can do his or her past relevant work.  See id. at §

416.920(a)(4)(iv),(e)-(f).  Finally, if it is found that the claimant cannot do his or her past relevant

work, the Commissioner will consider the claimant's residual functional capacity, age, education,

and work experience to see if he or she can make an adjustment to other work.  See id. at §

416.920(a)(4)(v),(g).

     The claimant bears the burden of proof on the first four steps of this analysis.  DeChirico

v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citation omitted).  If the ALJ concludes at an

early step of the analysis that the claimant is not disabled, he or she need not proceed with the

remaining steps.  Williams v. Apfel, 204 F.3d 48, 49 (2d Cir. 2000).  If the fifth step is necessary,

the burden shifts to the Commissioner to show that the claimant is capable of other work.

DeChirico, 134 F.3d at 1180 (citation omitted).

## III.   DISCUSSION

     As required, in deciding Plaintiff's case, the ALJ applied the five-step sequential analysis

set forth in the regulations.  First, the ALJ found that Plaintiff had not engaged in any substantial

gainful activity since her alleged onset date of October 2, 2002.  AR 16.  Second, he found that

the medical evidence established that Plaintiff suffered from osteoarthritis, hypertensive vascular disease, and hyperthyroidism, impairments that are "severe" within the meaning of the Social Security Regulations.  Id. 17.  Third, the ALJ found that Plaintiff's impairments, singly or in combination, did not meet or equal in severity any category of the Listing of Impairments found in Appendix 1 to Subpart P of Part 404 of the Social Security Regulations.  Id.  Therefore, he went on to determine Plaintiff's residual functional capacity and concluded that "at all relevant times [Plaintiff] has retained the residual functional capacity to perform a full range of light work that would not require her to lift more than 20 pounds occasionally and 10 pounds frequently, sit for longer than two hours or stand or walk for longer than six hours in an eight-hour day."  Id. 20.

At the fourth step in the analysis, the ALJ found that Plaintiff could not return to her past relevant work as a home attendant and babysitter since, at the hearing, the vocational expert testified that such work was medium in exertional requirements, and Plaintiff could perform no more than light work.  Id.  Thus, the burden shifted to the Commissioner to show that there were "other jobs existing in significant numbers in the national economy that [Plaintiff could] perform, consistent with her residual functional capacity, age, education and work experience."  Id.  At the fifth step in the analysis, the ALJ relied upon the medical vocational guidelines (the "grids") contained in 20 C.F.R. Pt. 404, Subpt. P, App. 2, taking into account Plaintiff's residual functional capacity, age, education, and work experience.  He found that Plaintiff was 53 years old, or "closely approaching advanced age," on her alleged onset date of October 2, 2002, and her filing date of January 15, 2003.  Id.  The ALJ noted that on the date of the hearing, January 21, 2004, Plaintiff was within six months of the attainment of age 55, which is defined as "advanced age."  Id.  Thus, for purposes of his decision, the ALJ deemed Plaintiff to have attained

"advanced age" on January 21, 2004.  Id.  The ALJ found that Plaintiff had an eighth-grade,

"limited" education.  Id.  He noted that the vocational expert testified that Plaintiff had a semi-

skilled background but no acquired skills that would transfer to jobs within her residual

functional capacity.  Id.  The ALJ concluded that "[b]ecause the evidence supports a finding that

[Plaintiff] has at all times been able to perform the demands of the full range of light work, a

finding of 'not disabled' is directed by Medical-Vocational Rule 202.11, for the period prior to

[Plaintiff's] deemed attainment of age 55 on January 21, 2004.  However, at her deemed

attainment of age 55 on January 21, 2004, she became an individual of 'advanced age,' and her

worsening vocational profile and residual functional capacity for a full range of light work

coincided with Rule 202.06[10], which directed that she is 'disabled.' "  Id. at 21.  Consequently,

the ALJ determined that Plaintiff was disabled within the meaning of the Act since January 21,

2004, but not before that date.  Id.

        In his motion papers, the Commissioner contends that the ALJ failed to adequately

address the conflicting medical opinion of Plaintiff's treating physicians; failed to recontact one

of Plaintiff's treating physicians to clarify her later opinion that Plaintiff was totally disabled; and

improperly treated the opinion of a State Agency disability analyst as an opinion from a medical

source.  Thus, the Commissioner seeks a reversal of his decision that Plaintiff was not disabled

and a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. §

405(g), so that the ALJ can properly analyze and clarify the medical opinion evidence of record.

See Docket # 10.  In response, Plaintiff cross-moves for judgment on the pleadings, contending

---

[10]While the ALJ cited Rule 202.06, that rule applies when the claimant is at least a high school
graduate.  Rather, the applicable rule would be 202.02, which applies when the claimant has a
"limited" education.

that the ALJ's decision is not supported by substantial evidence and therefore, remand is appropriate only for the award of benefits.  Docket # 13.  Should the Court determine that remand for further administrative proceedings is appropriate, however, Plaintiff requests that the Court order the new hearing to occur within 90 days of entry of judgment.  Id.

### A.    The Medical Opinion Evidence

Under the Social Security regulations, a treating physician's opinion regarding the nature and severity of a claimant's impairments will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 416.927(d)(2).  If a treating physician's opinion is not given controlling weight, then various factors are applied in determining what weight to give it: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship; (iii) the extent to which the medical source provides relevant evidence to support an opinion; (iv) the extent to which the opinion is consistent with the record as a whole; (v) whether the opinion is given by a specialist; and (vi) other factors which may be brought to the attention of the ALJ.  Id. at § 416.927(d)(2)(i)-(ii), (d)(3)-(d)(6).  The regulations further state, "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  Id. at § 416.927(d)(2).  "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand."  Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

In this case, the ALJ concluded that Plaintiff could perform light work[11] based on a

---

[11]The Social Security Regulations define light work as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal

"general consensus" among her treating physicians that she could sit for four to eight hours a day and lift 10 to 20 pounds.  AR 19.  However, the opinions of Plaintiff's treating physicians were conflicting regarding how much she could lift, with Dr. Kleinman finding that Plaintiff could lift 6-10 pounds occasionally and could never lift 11-20 pounds, AR 203, while Dr. Samer found that Plaintiff could lift 0-5 pounds frequently, 6-10 pounds occasionally, and 11-20 pounds occasionally, id. 208, and Dr. Cruz-Banting found that Plaintiff could lift 0-5 pounds frequently, 6-10 pounds frequently, and 11-20 pounds occasionally.  Id. 213.  In addition, as noted by the ALJ, Plaintiff's treating physicians did not agree about how many hours in a day Plaintiff could stand and walk, but he did not address the fact that none of them believed that she could stand or walk for the 6 hours in an 8-hour workday required to perform the full range of light work.[12] Rather, the ALJ stated that these medical source opinions "must be weighed in the context of their consistency with the clinical findings and other substantial evidence in the record . . ."  Id. 19.

---

of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.967(b).  The Social Security Administration has further explained that " '[f]requent' means occurring form one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251, at p. 4.

[12]Dr. Kleinman indicated that Plaintiff could stand up to one-half hour continuously and for a total of one hour in an 8-hour workday and could walk up to one-half hour continuously and for a total of one hour in an 8-hour workday, AR 203; Dr. Samer indicated that Plaintiff could stand up to two hours continuously and could walk for up to one hour continuously, but did not give the total amounts of time in an 8-hour workday that Plaintiff could stand or walk, id. 208; and Dr. Cruz-Banting indicated that Plaintiff could stand up to 30 minutes continuously and for a total of 4 hours in an 8-hour workday and could walk up to 30 minutes continuously and for a total of 4 hours in an 8-hour workday.  Id. 213.

Without explaining how he reconciled the various treating physician opinions, the ALJ declined to give any of them controlling weight, concluding that "the minimal clinical findings in and of themselves suggest that the treating physicians have vastly overstated the claimant's functional limitations." Id. He further noted that two of the treating physicians, Dr. Kleinman and Dr. Cruz-Banting, had not treated Plaintiff long enough "to determine the effects of treatment or develop a longitudinal history on which to base their opinions." Id. The ALJ did not address Plaintiff's treatment relationship with Dr. Samer who, in his medical report dated December 16, 2003, noted that he saw Plaintiff every two months, although he did not indicate the last time that he had seen Plaintiff or when Plaintiff's treatment began. Id. 206.[13] Thus, the ALJ did not explain, consistent with the Social Security regulations, how he applied the treating physician rule to the treating source evidence in the record.

Furthermore, the ALJ concluded that "the assessment of the State Agency physicians strikes a reasonable common ground that is most consistent with the clinical findings and the claimant's activities of daily living and best represents what she can still do in spite of her impairments." Id. 20. The "State Agency physicians" had determined that Plaintiff had the residual functional capacity to perform a full range of light work. Id. 18.

However, as conceded by the Commissioner, the assessment relied upon by the ALJ was not authored by "State Agency physicians," but rather, was authored by a State Agency disability examiner. Mem. of Law in Supp. at 14-15. "The opinion of a disability examiner, by itself, does not constitute substantial evidence sufficient to support the ALJ's decision." Suarez v. Comm'r

---

[13]It appears that Dr. Samer took over Plaintiff's care from Dr. Steven Colucci, a doctor at St. Barnabas Hospital whom Plaintiff had been seeing for many years. See AR 48, 89.

of Soc. Sec., No. 06 Civ. 2868, 2009 WL 874041, at *8 (S.D.N.Y. Mar. 26, 2009) (citations

omitted).  Furthermore, "[w]ere an ALJ to rely erroneously on the opinion of a non-physician to

reject an actual treating physician's opinion, the ALJ would violate the treating physician rule."

Id.  Thus, where, as here, the ALJ gave dispositive weight to the opinion of a non-medical

source, he committed legal error.

Moreover, there is a question as to whether the ALJ fulfilled his duty to develop the

record in Plaintiff's case.  The ALJ rejected Dr. Cruz-Banting's follow-up report, which stated

that Plaintiff was "totally disabled," AR 19, 218, based on the fact that this opinion "addresse[d]

legal issues that are reserved to the Administrative Law Judge."  Id. 19.  Indeed, the ultimate

determination of whether a claimant meets the statutory definition of disability is reserved to the

Commissioner.  20 C.F.R. § 404.927(e)(1).  "That means that the Social Security Administration

considers the data that physicians provide but draws its own conclusions as to whether those data

indicate disability.  A treating physician's statement that the claimant is disabled cannot itself be

determinative."  Snell, 177 F.3d at 133.  Nonetheless, "opinions from any medical source on

issues reserved to the Commissioner must never be ignored."  SSR 96-5p, 1996 WL 374183, at

*3 (S.S.A. July 2, 1996).  Thus, "if the evidence does not support a treating source's opinion on

any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the

opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the

source for clarification of the reasons for the opinion."  Id. at *6; see 20 C.F.R. § 416.912(e)

("When the evidence we receive from your treating physician . . . is inadequate for us to

determine whether you are disabled, we will need additional information to reach a determination

or a decision.  To obtain the information, we will . . . seek additional evidence or clarification

from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. . . ."). "Because the ALJ did not have a complete medical record, he was necessarily limited in his ability to properly assess Plaintiff's RFC [residual functional capacity]. Thus, we cannot determine whether the ALJ's RFC is supported by substantial evidence without further development of the evidence." Groff v. Comm'r of Soc. Sec., No. 7:05-CV-54, 2008 WL 4104689, at *12 (N.D.N.Y. Sept. 3, 2008) (citation omitted).[14]

In sum, the ALJ committed error when he failed to apply the correct legal standard in weighing the medical opinion evidence and failed to develop the record from Plaintiff's treating sources.

## B.      The Appropriate Remedy

Under sentence four of § 405(g), the court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). As the Second Circuit has stated, " 'Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence.' " Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)). "Furthermore, remand is warranted if further findings or explanation will clarify the

---

[14]It is worth noting that the record lacks treatment notes from Dr. Kleinman as well.

rationale for the ALJ's decision."  Groff, 2008 WL 4104689, at *12 (internal quotation marks and citation omitted).

Plaintiff claims that in this case, the ALJ has "reached a mistaken conclusion on an otherwise complete record," Rosa, 168 F.3d at 83, and therefore, the Court should reverse and remand solely for the award of benefits.  However, as explained above, the ALJ failed to develop the record as required by the Social Security regulations.  Moreover, he failed to apply the correct legal standard in evaluating the medical opinion evidence.  Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that the case should be remanded for further administrative proceedings.[15]

Were the Court to order a remand, Plaintiff requested that a time limit be imposed for the conduct of further administrative proceedings, citing the Second Circuit decision in Butts v. Barnhart, 388 F.3d 377 (2d Cir. 2004), amended in part on rehearing by, 416 F.3d 101 (2d Cir. 2005).  See Mem. of Law in Opp. at 21-22.  In its opinion on rehearing, the Second Circuit stated that "our holding is limited to cases where the claimant is entitled to benefits absent the Commissioner's providing expert vocational testimony about the availability of appropriate jobs."  Butts, 416 F.3d at 104; see Butts, 388 F.3d at 387 ("[I]n cases involving an ALJ's failure to call a vocational expert, district courts that select remand as a remedy should consider imposing a time

---

[15]Plaintiff also argues that a remand for further administrative proceedings should be denied because the Commissioner has not made "a showing in the district court that new evidence exists that might change the result," Mem. of Law in Opp. at 20, nor has the Commissioner provided reasons why she was prevented from offering such evidence previously.  However, that is the standard applicable to a remand sought under sentence six of § 405(g) ("The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..."), and in this case, the Commissioner seeks a remand under sentence four.

limit on the subsequent proceedings.").  Because this is not such a case, I conclude, and

respectfully recommend that Your Honor should conclude, that Plaintiff's request to impose a

time limit should be denied.

## CONCLUSION

For the foregoing reasons I conclude, and respectfully recommend that Your Honor

should conclude, that the Commissioner's motion for remand (Docket # 9) should be granted,

Plaintiff's motion for judgment on the pleadings (Docket # 12) should be denied, and the

Commissioner's determination should be reversed and remanded for further administrative

proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[16]

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties

shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d),

or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written

objections to this Report and Recommendation.  Such objections, if any, shall be filed with the

Clerk of the Court with extra copies delivered to the chambers of The Honorable Stephen C.

Robinson at the United States Courthouse, 300 Quarropas Street, White Plains, New York,

10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

_____

[16]As a remand pursuant to sentence four, the Court's decision would constitute a final judgment, and the Clerk of the Court would be directed to close the case.  See generally Shalala v. Schaefer, 509 U.S. 292, 297-99 (1993) ("a sentence-four remand order terminates the civil action seeking judicial review of the [Commissioner's] final decision") (internal quotation marks, alteration, and citation omitted).

Requests for extensions of time to file objections must be made to Judge Robinson.

Dated: July 29, 2010
    White Plains, New York

Respectfully submitted,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Stephen C. Robinson, U.S.D.J.

Counsel of Record for Plaintiff and the Commissioner of Social Security